OPINION OF THE COURT
George M. Heymann, J.
Petitioner commenced this personal use holdover proceeding seeking to recover apartment 4A at 273 South 2nd Street, Brooklyn, New York 11211, “for the use and occupancy of a member of his immediate family as her primary residence.”
On August 18, 2006, the petitioner served the respondent a “Notice to Tenant of Non-renewal of Lease, Termination of Tenancy and Landlord’s Intention to Recover Possession Based on Owner Occupancy” also known as a “Golub” notice[1] by certified and regular mail.
In addition to providing information regarding the individual who intends on living in the subject premises as her primary residence, and informing the respondent that her tenancy will terminate when her lease term expired on November 30, 2006, said notice contained the following:
“Upon information and belief, the tenant herein is not over sixty-two (62) years of age and does not suffer from a permanent impairment as defined under Section 2520.6 (p) and (q) of the Rent Stabilization Code [RSC].[2]
“If, in fact, the tenant is sixty-two (62) years or *474 older and/or is so physically impaired, it is requested that the tenant notify the attorneys for the landlord, in writing, immediately.” (Emphasis added.)
Respondent now moves this court for an order pursuant to Civil Practice Law and Rules § 3212, granting the respondent
“summary judgment in dismissing the Petition herein on the ground that Petitioner has failed to comply with the statutory mandate of 9 NYCRR § 2524.4 (a) (2)[3] in that Ms. Santos is disabled as defined by the Rent Stabilization Code and Petitioner has failed to offer and provide ‘an equivalent or superior housing accommodation at the same or lower regulated rent in a closely proximate area’, and granting Respondent such further relief as may be just.”
Respondent contends in her affidavit that she is disabled as defined by the Rent Stabilization Code and thus the petitioner’s failure to offer to provide or provide “an equivalent or superior housing accommodation at the same or lower regulated rent in a closely proximate area” is a fatal defect in the predicate notice. As confirmation of her being disabled, the respondent provides as her only proof a printout (respondent exhibit 1) dated January 26, 2007, indicating that she receives Supplemental Security Income (SSI) benefits and next to the phrase “Type of Person:” are the words “Disabled Individual.”
*475 The respondent avers that the petitioner was put on notice that she was disabled since she informed his attorney that she was disabled on the first court date, December 13, 2006, and also stated it in her subsequent answer to this proceeding on April 16, 2007.
Petitioner opposes the motion for summary judgment or, in the alternative, seeks a hearing to determine if the respondent is disabled as defined in the ESC. Petitioner states that the parties consented to discovery in a stipulation dated March 30, 2007 but the respondent’s attorney never served any request to depose the petitioner and instead brought the instant motion.
Petitioner points out that the only proof submitted by the respondent is the printout annexed to her motion papers which, although it refers to her as a “Disabled Individual,” provides no other information as to the nature or extent of the disability. There is no other corroborating information provided. Petitioner argues that receiving SSI is not an absolute defense to this proceeding.
The respondent counters by claiming that “[t]he Social Security Administration [SSA] has supremacy in disability matters as the federal government has charged it with making disability determinations’’ and that the “SSA is best qualified to judge a person’s medical condition. ... If SSA grants SSI, the recipient has been held to a stringent standard and is severely disabled.” (Respondent’s attorney’s reply affirmation 1Í 4.)
In respondent’s reply affidavit (1if 3-4), she describes, for the first time, the medical conditions which prevent her from finding employment, to wit: mental problems for which she takes two medications, i.e., chronic psychiatric conditions including depression, anxiety, loss of memory, severe nervousness and sometimes hearing voices, terrible arthritis causing debilitating pain, dangerously high blood pressure, high cholesterol and rhinitis. Respondent sees a psychiatrist once a month and goes to group therapy once a week and has had physical therapy and rehab over the years.
Although the respondent gives this detailed description, she does not provide any documentation with regard to any of the above-mentioned conditions. The respondent relies entirely on the SSI reference to “Disabled Individual.”
In support of her position that she is, in fact, disabled, the respondent relies on the case Gogu v Ely (152 Misc 2d 169 [Civ Ct, Queens County 1991]) wherein the court concluded that the *476 tenant’s condition as defined by the Social Security Act rendered her “disabled” pursuant to the RSC. There, the court held that the condition manifested by the respondent “is for the purposes of the Social Security Act a mental impairment of substantial duration. The definition of ‘disabled’ within the meaning of the Code mirrors the concept focused in the Social Security Act. Accordingly, respondent is a disabled person within the meaning of the Rent Stabilization Code.” (152 Misc 2d at 171.)
Even if the court were to accept the respondent’s contention, that the SSA’s determination that she is a “disabled individual” as being conclusive regarding her claimed disability pursuant to the definition set forth in the RSC, as did the court in Gogu v Ely (supra), that does not automatically warrant summary judgment in the respondent’s favor dismissing this proceeding.
Respondent takes the position that by not offering to provide “an equivalent or superior housing accommodation at the same or lower regulated rent in a closely proximate area” in the body of the combined “Golub” notice and termination notice, said notice is thereby defective, thus depriving this court of jurisdiction over this matter.
The court disagrees with that assessment. This very issue was addressed in Gordon v Kahn (2002 NY Slip Op 50517[U], *4 [Civ Ct, NY County 2002]) as follows:
“Neither Sections 2524.2 or 2524.4 require that a predicate notice include language that if the tenant was a senior citizen [or disabled] the landlord would be required to provide equivalent or a superior housing accommodation at the same or lower regulated rent in a closely proximate area. A tenant’s entitlement to relocation to equivalent housing under RSC Section 2524 only arises after he or she proves that they are 62 years old. A landlord who seeks owner occupancy need not first determine that a tenant is 62 years old or disabled. Rather, the fact that a tenant is a senior citizen or disabled is a defense to the proceeding which must be pleadfed] and proven by respondent. Once respondent establishes that she is in fact a senior citizen [or disabled] then petitioner’s obligation to relocate her arises.”
*477 Citing Gordon v Kahn, the court in Miller v Jones (NYLJ, Jan. 28, 2004, at 19, col 1 [Civ Ct, NY County)[4] reiterated this position:
“A tenant who claims the affirmative defense that he/she is a Senior Citizen to an owner’s use proceeding and, thus, is protected under § 2524.4(a) (2) of the RSC, must first plead and prove that he or she is sixty-two years of age or older. See, Gordon v Kahn, NYLJ, January 8, 2003, at 19, col. 2 [Civ Ct, New York Co]. Once a landlord learns that the tenant is a Senior Citizen under RSC § 2520.6[p], then the landlord’s obligation to relocate him/her arises. Id. A landlord/owner, however, is not affirmatively required to ascertain if a tenant is protected under § 2524.4[a] [2] of the RSC as a Senior Citizen before proceeding to recover the stabilized apartment. Id.”
Although these two cases involved senior citizens, their application to the case at bar pertaining to a disabled person has the same force and effect. Similarly, in Mora v Cassino (196 Misc 2d 403, 405 [Civ Ct, NY County 2003]) the court opined that “[t]here is no indication in the statute when the offer is to be made or whether an allegation that it was made must be included in the notice of nonrenewal or the petition.”
Here, the petitioner clearly stated in his predicate notice that if the respondent was either a senior citizen and/or a disabled person she should immediately notify the petitioner in writing. As the respondent admitted in her affidavit, she did not “inform” the petitioner that she was disabled until the first court date on December 13, 2006, and then restated it in her answer four months later on April 16, 2007. The respondent did not immediately respond in writing to the predicate notice, or did she provide any documentation to the petitioner of her disability when she “informed” the petitioner of same in court, or subsequently when she filed her answer.
Based upon the respondent’s own characterization of her “disability,” symptoms such as high blood pressure or cholesterol, or anxiety and depression are not necessarily the type of conditions that would trigger the landlord, or anyone else, to be cognizant of her “disability” by mere observation. Nor should *478 someone’s age or disability be subject to the landlord’s conjecture, speculation or guesswork.[5]
Thus, it was incumbent upon the respondent to take affirmative steps to notify the petitioner that she requires, and is entitled to, relocation in accord with the statutory exception to the nonrenewal of her lease for the personal use occupancy by the petitioner or a member of his immediate family.
Having now affirmatively raised her “disability” as a defense to this proceeding, the court must decide whether to grant summary judgment outright, dismissing this proceeding, or, as requested by the petitioner, to set the matter down for a hearing on the issue of whether the respondent’s “disability” falls within the definition set forth in ESC § 2520.6 (q), or to refer this matter to the trial part for both parties to present their evidence in support of their respective positions.
It should be noted that in Gogu v Ely (supra), relied on by the respondent, the court, notwithstanding its finding that the respondent therein was disabled under the ESC, having been designated disabled by the Social Security Act, did not dismiss the proceeding but granted the petitioner a judgment of possession. However, it stayed issuance of the warrant of eviction until such time as the landlord complied with ESC § 2524.4 (a) (2), and offered to provide or provided the tenant comparative substitute housing.
Despite the more “stringent” standards of the SSA than the ESC regarding whether an individual qualifies as “disabled” to prevent eviction from his or her rent-stabilized premises for the landlord’s personal use, this court is not prepared to accept as a fait accompli an uncertified printout, without more, as a basis to deny the petitioner an opportunity to legally recover his premises when the respondent’s lease expired. The ESC provides a landlord with only two opportunities to avoid renewal of a lease to recover a rent-stabilized apartment: personal use occupancy by the landlord or a member of his immediate family, or where a landlord can prove that the tenant is not utilizing the apartment as his or her primary residence. As previously mentioned, in either of these instances, the landlord must timely serve a “Golub” notice to the tenant prior to the expiration of the lease term. Therefore, dismissal of this type of proceeding puts the petitioner in the unenviable position of hav *479 ing to wait an additional one or two years before having the next opportunity to recommence another proceeding on the same ground.
By the same token, the burden is on the petitioner to prove that his intention to use the respondent’s apartment for his own use, or, in this case, for use by a family member, is genuine. In carefully scrutinizing the pleadings, the court finds that the respondent’s third affirmative defense, that the petitioner failed to state the relationship between himself and “Brooke Tammy Borg,” warrants a factual determination. If the petitioner is successful in proving his prima facie case, then, of course, the respondent’s affirmative defense regarding her disability, if proven, will be the determining factor as to whether the petitioner will be granted his judgment to recover the subject premises.
Accordingly, the respondent’s motion to dismiss is denied.

. Golub v Frank (65 NY2d 900 [1985]). This notice must be served within the “window period” of not more than 150 nor fewer than 90 days prior to the expiration of the lease.

. RSC (9 NYCRR) § 2520.6 (q):
“Disabled person ... a person who has an impairment which results from anatomical, physiological or psychological conditions, other than addiction to alcohol, gambling, or any controlled substance, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques, and which are expected to be permanent and which prevent such person from engaging in any substantial gainful employment.”

. ESC § 2524.4:
“Grounds for refusal to renew lease . . .
“The owner shall not be required to offer a renewal lease to a tenant . . . and may commence an action or proceeding to recover possession in a court of competent jurisdiction, upon the expiration of the existing lease term, if any, after serving the tenant with a notice as required pursuant to section 2524.2 of this Part [Termination Notices] only on one or more of the following grounds:
“(a) Occupancy by owner or member of owner’s immediate family. “(1) An owner who seeks to recover possession of a housing accommodation for such owner’s personal use and occupancy of a member of his or her immediate family as his or her primary residence in the City of New York ....
“(2) The provisions of this subdivision shall not apply where a tenant or the spouse of a tenant lawfully occupying the housing accommodation is a senior citizen or disabled person, as previously defined herein, unless the owner offers to provide and, if requested, provides an equivalent or superior housing accommodation at the same or lower regulated rent in a closely proximate area.”

. See Dov Treiman’s commentary to this case (32 HCR Comm 8) for some interesting observations about “equivalent or superior accommodations” and the redundancy of the term “closely proximate.”

. See Treiman’s commentary to Croman v Leighton (NYLJ, July 21, 2004, at 18, col 3 [Civ Ct, NY County]). (32 HCR Comm 71.)