■ In the Matter of MAURICE BRITT, Petitioner, v THOMAS P. DiNAPOLI, as Comptroller of the State of New York, et al., Respondents. [936 NYS2d 728]—

McCarthy, J. 

Petitioner has not preserved his due process arguments. The parties and Hearing Officer all acknowledge that the time of the second hearing was moved without informing petitioner or his counsel. The Hearing Officer and counsel for the Retirement System apparently agreed to take the direct testimony of the Retirement System's witness—a doctor who conducted an examination of petitioner and reviewed his medical records—and admit his reports, reserving to petitioner the right to object to the testimony and reports and to cross-examine the doctor at a later time. The record does not support petitioner's argument that any ex parte communication addressed matters of fact or law, as opposed to scheduling and procedure. This communication for purely administrative purposes was not improper (see State Administrative Procedure Act § 307 [2]; Matter of Cantone v DiNapoli, 83 AD3d 1259, 1260 [2011]). Petitioner's counsel did not object to the procedure relating to the doctor's testimony, either in his letter acknowledging that procedure, at the hearing scheduled for cross-examination of the doctor, or in counsel's post-hearing submission. Thus, any argument concerning this procedure is unpreserved (see Matter of Adam v County of Onondaga, 26 AD3d 618, 619 [2006]; Matter of Porter v McCall, 305 AD2d 920, 922 [2003]). Although there was an inordinate

delay in scheduling that may have contributed to the doctor's inability to recall many aspects of the situation, counsel adequately cross-examined the doctor and pointed out his lack of recall.

The Hearing Officer did not err in admitting the doctor's supplemental report. Even though that document was created after the initial determination was rendered, the record at these hearings is not limited to information available at the time of the initial determination; rather than a review of the initial determination, a hearing is conducted to allow the Comptroller to make a "redetermination" with "the same powers upon such hearing as upon the original application" (Retirement and Social Security Law § 74 [d]; see Matter of Anderson v McCall, 294 AD2d 740, 741 [2002]).

The Comptroller's determination is not supported by substantial evidence. As the parties agree that petitioner is permanently incapacitated from performing his duties, the only issue in dispute is whether petitioner has met his burden of demonstrating that his incapacity was the natural and proximate result of his workplace injuries (see Matter of Micalizzi v DiNapoli, 81 AD3d 1067 [2011]). Petitioner's unrefuted testimony established that he did not experience back problems prior to the June 1999 incident and, although he was able to resume full duties in 2001, he became completely unable to work after the January 2005 incident. Petitioner's chiropractor, an orthopedic surgeon who did an independent medical exam and a neurosurgeon who conducted another independent medical exam all agree that petitioner's disability was caused by the two work-related accidents. In contrast, an orthopedic surgeon who testified on behalf of the Retirement System opined that petitioner's disability stemmed from degenerative disc disease and osteoarthritis, rather than trauma. He characterized petitioner's work incidents as "temporary aggravations of a chronic underlying pre-existing condition." This medical opinion is at odds with the legal precept that "when a preexisting dormant disease is aggravated by an accident, thereby causing a disability that did not previously exist, the accident is responsible for the ensuing disability" (Matter of Sanchez v New York State & Local Police & Fire Retirement Sys., 208 AD2d 1027, 1028 [1994]; see Matter of Tobin v Steisel, 64 NY2d 254, 259 [1985]).

Accepting the opinion of the Retirement System's doctor that petitioner suffered from degenerative disease that was aggravated by the two incidents, the record still lacks substantial evidence to support the Comptroller's finding of a lack of causation. Petitioner was out of work for over five months following

the 1999 incident, returned to work in a less demanding position for a time, then resumed his full road patrol duty and continued in that position without limitations for several years until the 2005 incident. After the 2005 incident, he never returned to work. Because petitioner was completely asymptomatic prior to the 1999 incident, that incident—which, according to the Retirement System's doctor, aggravated petitioner's dormant condition—would legally be considered a cause of his disability (*see Matter of Tobin v Steisel*, 64 NY2d at 259; *Matter of King v DiNapoli*, 75 AD3d 793, 795-796 [2010]; *Matter of Sanchez v New York State & Local Police & Fire Retirement Sys.*, 208 AD2d at 1028; *Matter of Thomas v Regan*, 125 AD2d 125, 127-128 [1987]). Considering that the Comptroller relied on the opinion of the Retirement System's doctor, it is unclear if the 2005 incident aggravated the injuries from the 1999 incident or petitioner's preexisting condition.

Spain, J.P., Malone Jr., Stein and Egan Jr., JJ., concur. Adjudged that the determination is annulled, without costs, petition granted and matter remitted to respondent Comptroller for further proceedings not inconsistent with this Court's decision.